We received an order from the court last week asking the parties to address specifically the bearing of two cases on the outcome of this matter, that was United States v. Crawford and the discussion of Crawford and United States v. Milwaukee, which was authored by Judge Thomas. So I would begin there, if you would like to ask questions or how you want my, I don't, I wouldn't presume to tell you what your opinion was in your opinion, but I can tell you what else. How do you think those cases bear on this if they do at all? I think that they do bear on it. I think that, and this is simply my opinion, I think Crawford is wrongly decided based upon United States Supreme Court precedent. I'll stop there for a minute. Suppose it is wrongly decided. What do you think we can do about it? You can use this case, the Stamps matter, to correct it. How would we correct it? You know, it's a panel. We're bound by prior panel decisions. We're not free to say it's wrong. The only thing we can do is ask for an en banc. You're right. I'm sorry, I stand corrected. We would have to go en banc to correct Crawford. But suppose for the moment that we don't go en banc, then we're bound by Crawford. The correct answer to Judge Reinhart's question is this panel should move for sua spontane banc. Yes. That's sort of an inside thing, so you wouldn't know the answer to that. Putting that aside. No, no, it's not a trick. I mean, a panel can, I just explained, I'm not saying we're thinking of doing this, but a panel can, if it's faced with a precedent that it believes is wrong, can, instead of rendering a decision, call for a vote by the court to take the case en banc initially. It happens almost never, but it's possible. So anyway, I'll give you back this time. But putting aside the possibility that we'll do that, what's next? I'm assuming that Crawford is the law in this instance. Then is there anything we can do about your case? Yes. Other than affirm. No, I don't think you need to affirm. I think that. Why do you think this is distinguishable from Crawford? Because Crawford was never established. I actually think our case is even distinguishable from Millwood if we really want to refine it in the sense that if you're going to claim victim status, which is what UCLA, the government claimed in Crawford for UCLA, but they didn't really prove it, is what the dissent says. But if you are going to claim victim status, then you need to at least have, whoever the party is, a colorable claim to back that up. And our argument, which is why I don't really think, I think Crawford's decision is incorrect in the way it determines that it, that court, a panel of this court, said we've never, ever decided this or we've never done this. But there is Supreme Court precedent that says that is what the law is. And I think panels are bound to follow Supreme Court precedent. I think McNally is pretty clear on that point. But in Millwood, the interesting thing about Millwood, which is very comparable to our case, I believe, is that in Millwood, the evidence, the indictment charged one set of victims, the creditors, but the evidence was as to another set of victims, which was the tenants. And then when it came time to seek jury instructions, the court proffered the correct jury instruction, which followed the indictment, which was the creditors, which were actually the landlords in this case, in that case, in Millwood. It's a similar thing happened here. The government charged that they were the victim in this case. And the evidence in the case shows that they did not have even a colorable claim of a possessory interest or any legal interest in the funds that are subject of this indictment. Didn't the government make good the loss? Correct. Didn't the government make good the loss? The government paid CalMAT $1.3 million, which is the money that is counts 1, 2, and 3 of the indictment. Which is money it would not have had to pull out of the treasury if your client hadn't stolen. Excuse me. Am I correct, factually? Yes, you're correct. So why doesn't, why is there not enough of a possessory interest? Because loss alone is not sufficient to show it's loss at this fact. Number one, in mail fraud cases, my understanding, I could be wrong, is that the crime is completed with the mailing or even at some point after, at the latest, would be with the cashing of the checks in a money case, a money mail fraud case. That was way before the crime here was discovered. When they discovered that the funds were missing from not only CalMAT's accounts but other accounts, the interesting thing is that the government acted in two different ways towards two different accounts. They immediately paid back CalMAT, but with the other cooperators, private entities, they sent them letters saying if you have a claim to any money that was seized from Mrs. Stamp's bank accounts, you know, write us a letter and tell us why you think you're entitled to some of these funds. CalMAT's money, and it is hyper-technical. It's a very technical argument. The money belonged to CalMAT at all times, and it really belonged to CalMAT at the point where it was diverted because CalMAT had demanded the return of its funds, all of them, $1.3 million, and the refund had issued and was being processed. So at that point, whatever colorable claim, and I will concede arguably a colorable claim, possession, nine-tenths of the law, seems to be the government's argument. It's in my lockbox, my bank, therefore I have a possessory interest. Our argument is even here. Actually, you're saying a little more. Our employee steals it, and so we're responsible. We feel responsible because the lockbox was opened by somebody who's under our control. Yes. It's sort of like the bank having access, having lockboxes, an employee going in and emptying the money out of one of those safety deposit boxes. And the bank says, well, that may have been the customer's money, but it happened in our bank. Our employee is the one who took it out. If we get sued, we're going to have to come up with the money because, you know, so ultimately it's our money. But they paid it back after the loss was discovered, after the crime occurred. They couldn't very well pay it before. They actually could have. They owed them the money. That's what the distinction is here, is that the forest owed CalMAT the money.  Congress created trust accounts. Congress created legislation to protect these monies of CalMAT and other private entities that do business with the forest. The whole purpose of the legislation that are cited in my briefs are geared towards protecting these funds, much like an attorney-client trust account. So at the point where CalMAT would advance funds, you know, in expectation or possible anticipation of profits from the minerals that they drew a year later from the forest land, those monies were always their monies contingent upon a profit. A profit was never shown, and the government, that is the evidence. You've got about a minute left. Would you like to save it? Yes. Time fleets. We'll hear from the government. May it please the Court. Douglas Miller on behalf of the United States. The single issue that this Court has been asked to consider is whether the government introduced sufficient evidence at trial to prove beyond a reasonable doubt that it had a sufficient interest in the money that the defendant stole. And I submit that based on the record and the considerable deference that this Court must give to the factual findings of the district court, the Honorable Judge Schneider, that the answer to that question is yes. That is, that there was sufficient evidence, and I quote, for the Court to find that the defendant knowingly and with the intent to defraud devised, participated in, and executed a scheme to defraud the United States as to material matters and to obtain money and property from the United States. Second, that the object of the defendant's scheme was to file fraudulent public vouchers with the United States Forest Service, i.e., the United States, and thereby obtain money being held in an account owned by the United States Treasury. I submit that the government introduced sufficient evidence at trial for the district court judge to make those findings. I believe that those are the findings that are at the core of the issue that the Court has asked us to further consider in the Crawford case and then in the Milvett case. I submit that the Crawford case is on point with the facts of this case, that what the defendant sought to do in Crawford was have the government prove something that went beyond the elements of the offense. That is, to show that not only that the property that was taken, in that instance UCLA, proved not only that the property was in its possession, but that it owned that painting. And what the court came back and said was no. Now, the government in that case, actually, let me go back, the court in that case sought to explain, I believe, that the government was not required to prove ownership over the painting. What was not at issue in Crawford, which I think became an issue in Milvett, was whether or not the government would have an obligation to even charge in the indictment that UCLA was deprived of something. That is, to identify a victim of the fraud. And I think what has happened in this case is we've begun to analyze what it means to be a victim. Is the government required to prove that it was, in this instance, the government, the victim, deprived of property? And was the government required to allege that in the indictment? That happened, and I would submit, yes, we were required to do that. And that comes up in Milvett. If the government had alleged some amorphous scheme to defraud, where it simply said that the defendant schemed to defraud and didn't close out that sentence as to who the government alleged was being defrauded, then there would be a problem. That did not happen in this case. The government set out in the indictment that the victim of the fraud was the United States. It didn't say the defendant executed a scheme to defraud the government of its money. It just said that the defendant executed a scheme to defraud the government of property that it had in its possession. What would have happened if the government had decided not to make up the money, not to pay the $1.2 million? Do you mean with respect to the appeal, Your Honor? No, no. I meant in the real world. I don't mean the real world. I mean not in the criminal case, but as between the government and the contractor. CalMAT? CalMAT. Thank you. I'm sorry. The CalMAT. Could they have gone to the Court of Federal Claims and obtained a judgment against the United States for the money? To be honest, I don't know for sure, but what I can say is that— A few people know what the Court of Federal Claims does. I think a fair reading of the agreement that was entered into between the United States and CalMAT, that if CalMAT withdrew a certain amount of minerals that were less than the amount that they had advanced the government, that they would have some legal right—I don't know where they would bring the claim—to get that extra money or excess money back. And I think the government, based on the way the contract was written, would have been obligated to pay that money back. But what the defense suggested, even today, was that the government—excuse me, that the entire time the money in those accounts belonged to CalMAT. I don't believe that's true. I believe that the evidence that was presented at trial showed that those accounts—and the term lockbox might, when I was mooting this, it seemed to cause some confusion. The term lockbox does not mean that this money was set aside, even in the scenario you described, Your Honor. This money went into the United States Treasury, and it was not earmarked. There's testimony, and if the court would like me to point to that, I can, in the record, where although this term was used and kicked about at the local office in the Angeles National Forest, that money was actually pooled into the Treasury. And they used different symbols to try to identify where that money should go or end up. But I don't want the court to have the takeaway, and it's hard because there was a lot of accounting terminology in the record that's hard to keep up with. But it should be clear that that money was deposited into the United States Treasury, that the defendant, once it went into that account, because the defendant was an accountant for the Forest Service, knew, as all of the other accountants that testified at trial said they knew, there was evidence to suggest that it was no longer the CalMATS money. It was the Treasury's money. Now, if the Treasury was in a position to have to refund some of that, a claim would have had to be filed, and it would have been refunded. But it was never the CalMATS money once it went into it. I shouldn't say never. It was no longer CalMATS money once it went into that account. Okay, thank you. You have about 30, I'm sorry, you have a minute and five seconds for rebuttal. Thank you. Case decided. We'll stand submitted.
judges: Kozinski, Reinhardt, Thomas